523 So.2d 1087 (1987)
Mitchell RUTLEDGE
v.
STATE.
5 Div. 610.
Court of Criminal Appeals of Alabama.
April 28, 1987.
Rehearing Denied May 26, 1987.
*1090 Dennis N. Balske, Montgomery, for appellant.
Don Siegelman, Atty. Gen., and William D. Little, Rivard Melson, and William W. Whatley, Jr., Asst. Attys. Gen., for appellee.

ON RETURN TO REMAND
PATTERSON, Judge.
This case was remanded to the Circuit Court of Lee County, Alabama, on January 22, 1985, for a new sentencing hearing. Appellant, Mitchell Rutledge, had previously been convicted on June 3, 1981, of the capital offense of robbery when the victim is intentionally killed, in violation of  13A-5-31(a)(2), Code of Alabama (Supp. 1978) (repealed July 1, 1981),[1] and sentenced to death. The crime for which he was convicted was committed on December 23, 1980. On appeal, this court affirmed appellant's conviction and sentence with opinion on August 16, 1983. Rutledge v. State, 482 So.2d 1250 (Ala.Cr.App.1983). The facts of the case are set out in that opinion. Id. at 1252-53. The Alabama Supreme Court issued a writ of certiorari pursuant to A.R.A.P. 39(c) and, on September 7, 1984, affirmed appellant's conviction, but reversed our affirmance of appellant's sentence and remanded the case to this court with directions that we remand for a new sentencing hearing. (Rehearing denied, November 30, 1984.) Ex parte Rutledge, 482 So.2d 1262 (Ala.1984). The reversal was predicated on the prosecutor's improper argument during the sentencing hearing to the effect that life without parole does not necessarily mean life without parole. Our supreme court condemned this argument as being contrary to law, and not a reply in kind, as had been held by the trial court and this court. On January 22, 1985, on authority of Ex parte Rutledge, we remanded the case to the trial court for a new sentencing hearing and directed that, upon completion of the new sentencing hearing, due return thereof be made to this court. Rutledge v. State, 482 So.2d 1269 (Ala.Cr.App.1985).
The Circuit Court of Lee County conducted a new sentencing hearing in conformity with our directive and has made due return to this court. The circuit court has filed with this court a record of the complete sentencing proceedings. The record reflects that a new jury was empaneled on October 23, 1985, and after the hearing, the jury returned a verdict on October 24 recommending the punishment of death. Thereafter, the trial court conducted another *1091 hearing, and on November 7, 1985, accepted the death penalty recommended by the jury and sentenced appellant to death. The record further reflects that appellant and his counsel were present in court throughout all of the sentencing proceedings. From these proceedings, this appeal followed.
Appellant has filed a brief wherein he raises eight issues, each of which he claims constitutes reversible error. We will address these issues in the order in which they are presented in brief.

I
Appellant first contends that his constitutional rights were violated when the trial court, over the objection of the defense, permitted the victim's widow to testify at the new penalty phase hearing and, also, permitted the prosecution to refer to her in its closing argument to the jury.

A
During the State's presentation of a synopsis of the facts and circumstances of the crime for the new jury's benefit, the victim's wife, Virginia Love, testified briefly. She testified that she was married to the victim at the time of his death; that they had a twelve-year-old son; that on the evening of his death, her husband left home early, in his van; that she never saw him alive again; and that, after contacting the police, she furnished some documents displaying his fingerprints to aid in identification.
We find nothing improper in the admission of this testimony. Clearly, this testimony was properly admissible in the guilt phase. Thus, it was properly admissible in this sentencing phase as a part of the brief synopsis of the crime, for had the same jury been seated for both the guilt and sentencing phases, it could have considered such testimony. It is the jury's responsibility to make an individualized determination of sentence on the basis of the character of the individual and the circumstances of the crime. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Love's testimony aided the jury in understanding what happened, and its subject matter was within the realm of circumstances of the crime. The subject most relevant to the choice of punishment is the broad class of information about the defendant, his character, and the circumstances of his offense made known to the jury throughout the trial. Brooks v. Kemp, 762 F.2d 1383 (11th Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986). Consideration of these factors is made necessary by the Eighth Amendment's requirement that capital sentencing be individualized. Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). With few exceptions, any information about the individual defendant and his offense may be properly considered by the jury. Brooks v. Kemp.
The case of People v. Ramirez, 98 Ill.2d 439, 75 Ill.Dec. 241, 457 N.E.2d 31 (1983), cited by appellant, is distinguishable from the instant case, for in the case before us, the evidence that the victim left a widow and child was elicited incidentally and was not highlighted to the jury as material evidence. Here, this evidence was not presented in such a manner by the State as to cause the jury to believe that the information was material to its deliberations in arriving at a proper sentence. Nor do we believe that the jury considered it as material. Within the context of this case and in light of the other evidence presented, the testimony of the widow was so brief and insignificant that we cannot conclude that it injected prejudice or irrelevant facts into the jury's decision.

B
In closing argument before the jury, the prosecuting attorney stated, as follows:
"Talk about people caring for the defendant, I'm sure that they do. How about people caring for Virginia Holloway, and her son, Gable Holloway's son. Virginia Holloway didn't come in here and testify, and expect you to extend to her sympathy. She doesn't want sympathy for her son, she is just asking for one thing, *1092 justice. That's all she's asking for. She knows better than any of us what this case has meant to her and her family; she is just looking for justice, that's all, nothing more."
In reviewing allegedly improper prosecutorial argument, it first must be determined if the argument was, in fact, improper. If determined to be improper, the test for reviewing improper argument must be applied. This test is not whether the comments did influence the jury, but whether they might have influenced the jury in arriving at its verdict. Ex parte Ward, 497 So.2d 575, 575-76 (Ala.1986); Ex parte Beecher, 294 Ala. 674, 320 So.2d 727 (1975). As our supreme court explained in Ex parte Beecher, 294 Ala. at 682, 320 So.2d at 734:
"It has long been held regarding the introduction of illegal evidence, such as coerced confessions, that the test is not whether the illegal evidence did influence the jury, but whether it might have influenced it in arriving at the verdict. Hubbard v. State, 283 Ala. 183, 215 So.2d 261 (1968), vacated in part, 408 U.S. 934 [92 S.Ct. 2851, 33 L.Ed.2d 747] ... (1972). See also Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], and Fahy v. Connecticut, 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171] ... (1963). Under Const. of Ala. of 1901,  6, there is no valid basis for using a different test for improper prosecutorial comment. Thus we hold today that where there is the possibility that a prosecutor's comment could be understood by the jury as reference to failure of defendant to testify,  6 is violated."
In the instant case, we do not believe that this brief mention of the victim's family was intended by the prosecutor to inject prejudicial or irrelevant material into the sentencing decision, nor do we believe that it had that effect, particularly when considered in the light of the State's long summation as a whole. As we have held, the incidental fact that the victim left a widow and child was properly before the jury. We also view the comments as a way of rebutting the defense argument based on possible sympathy for appellant's family. Brooks v. Kemp. In addition, the more reasonable interpretation of the argument is that it was a call for justice, not sympathy, and, thus, within the latitude allowed prosecutors in their exhortation to the jury to discharge its duties. Ex parte Waldrop, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). We finally note that there was no timely objection to this portion of the argument. In the absence of a contemporaneous objection, only prosecutorial misconduct that constitutes plain error may require reversal. A.R.A.P. 45A. See also Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The fact that appellant did not see fit to object to this argument when made weighs against any possible claim of prejudice necessary for plain error. Ex parte Harrell, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
In support of his claim of reversible error, appellant relies on Lowman v. State, 38 Ala.App. 612, 91 So.2d 697, cert. denied, 265 Ala. 698, 91 So.2d 700 (1956), wherein the court reversed a conviction because of the prosecutor's reference to the "widow and a bunch of little children being left to raise" and "[the victim's] wife and six kids left and hungry." 38 Ala.App. at 614, 91 So.2d 699. Lowman is clearly distinguishable from the instant case. In Lowman, the prosecutor made a direct appeal for the jury to have sympathy for the victim's family, whereas in the case before us, the appeal was for justice.
For the foregoing reasons, we find that the portion of the argument complained of was not improper and, thus, there is no merit to this contention.

II
Appellant states his second contention, as follows: "The district attorney's penalty-phase closing argument rendered the capital sentencing proceeding inconsistent with the Eighth Amendment's heightened need for reliability in the determination that death was the appropriate punishment in this specific case." (Brief, p. 28.) He *1093 asserts that, during the penalty-phase closing argument, the prosecutor injected his personal beliefs and opinions, appealed to the passion and prejudice of the jury, referred to matters not in evidence, and urged the jury to return a death sentence on the basis of facts not in evidence.

A
Appellant first argues, under this contention, that the prosecuting attorney committed reversible error in allegedly urging the jury to give little weight to the non-statutory mitigation offered by the defense because it was not of the same stature as statutory mitigation, and by further allegedly urging the jury that the non-existence of statutory mitigation should be considered negatively against the defendant in balancing aggravation against mitigation. In support of this argument, appellant relies on State v. Buck, 670 S.W.2d 600 (Tenn.1984), and People v. Davenport, 41 Cal.3d 247, 710 P.2d 861, 221 Cal.Rptr. 794 (1985). In order to better understand appellant's argument, we will set out portions of the arguments of counsel and the trial court's oral charge. Prior to arguments, it was understood between the parties and by the court that the State would rely on evidence of two aggravating circumstances and the defense would rely on seven particular non-statutory circumstances. It was further agreed that the trial court would give the jury a list of these circumstances for its deliberations.
In opening the summation to the jury, the prosecuting attorney stated the following:
"Your duties as jurors in this case, as you know, and as you have been instructed by the Court already, and will be instructed again, is to weigh the aggravating circumstances, as defined by law, if you find any to be; and to weigh the mitigating circumstances, as defined by law, if you find any to exist; and weigh those circumstances and determine whether or not the most appropriate punishment in this case is the imposition of the death penalty or life without parole.
"Aggravating circumstances, as set out by Alabama law, there are eight of them, ....
"Two of them in this case, we have proven beyond any reasonable doubt, they are uncontradicted. The first one was this: the capital offense was committed by a person under sentence of imprisonment. He was under sentence of imprisonment, the penitentiary had turned him loose and put him out on parole; and that's where he was when he committed this crime; and I think there is no doubt about that, that's clear. Another aggravating circumstance is this: the capital offense was committed while the defendant was engaged or was an accomplice in the commission, or an attempt to commit, or a flight after committing, or attempting to commit robbery....
"But also in this case you will be asked to consider mitigating circumstances. There are two types of mitigating circumstances: there are statutory mitigating circumstances, and there are other mitigating circumstances. What you heard from Mr. Balske and the defense in this case, was other mitigating circumstances; which gets into the life of the defendant, so to speak. What you did not hear anything about was the statutory mitigating circumstances. Why not? The Code sets out aggravating circumstances, and the Code sets out statutory mitigating circumstances. Why didn't you hear anything about those? Instead of this general review of the defendant's life. Mitigating circumstances are those things that make it look good for the defendant. If they can offer evidence that one or more of these mitigating circumstances exist, it makes it look good for the defendant, makes it look better, that he might be more inclined to receive the punishment of life without parole; make it look better for him. But you didn't hear anything about that. And there are seven of them, seven mitigating circumstances, just like eight aggravating circumstances. Why didn't you hear anything about them?
*1094 "Well, let's look at them. Number one: the defendant has no significant history of prior criminal activity. You know why you didn't hear about that; because he is a three time convicted felon, and was out on parole at the time that he committed this, and had already served 23 months in the penitentiary for prior offenses. So, that didn't apply. Number two: the capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance. You didn't hear anything about that, did you? Not a thing, nothing to suggest that he's crazy, or intoxicated, drugs, or anything like that. There was no evidence of that. Three, the victim was a participant in the defendant's conduct or consented to it. Needless to say, Gable Holloway did not consent to be murdered in cold blood out on a dirt road back in December of 1980. Number four, the defendant was an accomplice in the capital offense committed by another person, and his participation was relatively minor. There were other people involved in this. Was this defendant an accomplice? Hardly, he was the trigger man, he's the one that stood there with that gun and pumped those four bullets into Gable Holloway. So, that doesn't apply. Five, the defendant acted under extreme duress, or under the subtantial domination of another person. Did you hear anything about that? You heard about everybody passing the gun around until it got to the defendant, and he is the one that did the killing. Nobody made him do it. But of course, you have heard a little bit about that from the defense, what a tough life he's had, and somehow this is the reason that somebody else, society perhaps, that made him do it. No evidence about that. Six, the capacity of the defendant to appreciate the criminality of his conduct, or to conform his conduct to the requirements of law was substantially impaired. That's getting back again, to maybe, he was crazy. There's no evidence whatsoever in this case that he has any mental problems. He knew exactly what he was doing. They planned it, they planned it during the afternoon up until they carried it out. Got the gun, got the bullets, selected a victim. And finally, seven, the age of the defendant at the time of the crime. He was 21 years of age at the time. He'd been in the penitentiary 23 months, already. He was convicted three times. He knew what was going on, it's not like we're talking about somebody that's 12 or 13. No evidence at all, ladies and gentlemen, of any of those statutory mitigating circumstances; none."
At this point in the argument, defense counsel objected, stating, inter alia, as follows:
"[H]e's making an argument that there's something for some reason that this defendant is less entitled to have non-statutory mitigating circumstances considered, and has now gone through all of the mitigating circumstances, which we have already said that we are not arguing, and you said that you were not going to charge on them. That these circumstances are totally irrelevant and he's trying to make an argument that for some reason that non-statutory circumstances are not on the same level. And that's improper and we would ask the Court to instruct the jury, at this time, to disregard that argument and that they are to consider any mitigating circumstances, statutory or non-statutory, all on the same level."
The trial court ruled, as follows:
"Well, I am going to be charging them that in addition to the mitigating circumstances that y'all have, that they can consider as further mitigating circumstances any aspect of the defendant's character and life. Any that covers the whole range of his lifetime. And if I charge them on that, then obviously he can argue the mitigating circumstances. What I'm saying, is, I am denying your request."
The prosecuting attorney continued, as follows:
"What I'm saying, ladies and gentlemen, those things that I've just talked to you about, those things should make it look *1095 better for the defendant. Not only do they not exist, but what facts you have heard from the State and from the defendant during the course of this trial establishes exactly the contrary, exactly the contrary, they don't exist.
"Now, you're going to hear from Mr. Balske about the non-statutory mitigating circumstances, and this is what you've heard about to some extent. And you're going to hear about the life of the defendant. And that's something for you to consider, also. So, when you consider mitigating circumstances you have a right and a duty to weigh the aggravating circumstances and the mitigating circumstances. And that's what the State is asking you to do in this case, consider what evidence you have heard, what you have seen, not only from the State but also from the defendant."
Defense counsel stated the following to the jury:
"Now, the Judge is going to instruct you about the aggravating and mitigating circumstances. And let me lay out for you the instructions that he will give you as to what are the aggravating circumstances to consider, and what are the mitigating circumstances that you're to consider. And then we will go through those one by one to assist you in reaching a decision that you are going to have to reach when you go back into the jury room.
"First, what are the aggravating circumstances? The Judge will instruct you to consider two: one that the capital felony was committed by a person under sentence of imprisonment; and two, that the capital felony was committed while the defendant was engaged in the commission of the robbery. Those are the two that he will instruct you on.
"He will also instruct you to consider mitigating circumstances. And in his charge he is going to tell you to consider seven of them. And these will be his words: the following is a list of the mitigating circumstances that you may consider in this case. One, that Mitchell Rutledge has no record of criminal conviction for crimes involving force or violence. Two, Mitchell Rutledge was forced to grow up in the streets, never had a father, he was born to a mother that was 13 or 14 years old. His mother and grandmother had no time for him. His grandfather was an alcoholic and four different men fathered Mitchell and his two brothers and his sister.
"The third mitigating circumstance, that the Court will charge you to consider, is that Mitchell Rutledge confessed his guilt.
"The fourth, Mitchell Rutledge has expressed remorse for his crime.
"The fifth, that Mitchell Rutledge cares for his family and continues to provide useful advice for his younger siblings.
"Six, Mitchell Rutledge has a family and friends that care about him, and have relationships with them that are beneficial to Mitchell and to them.
"And seven, the Judge will instruct you that you should consider that Mitchell Rutledge has improved his ability to read and write since the time of his conviction, and through this new ability has improved his own self image and has been able to give useful advice to his family and to his friends.
"So, those are the parameters, so that you now understand, that you are going to be operating under. You are going to have the two aggravating circumstances, and you are going to have these seven mitigating circumstances to go back and talk about and weigh out before you arrive at your decision."
In closing the arguments, the prosecutor stated, as follows:
"When you get back to the jury room to deliberate, I want you to deliberate long and hard, and discuss every aspect of this case. I don't want you to leave any stone unturned. I want you to look at those aggravating and mitigating circumstances. Those facts that have been brought before you by both sides. I want you to weigh them, I want you to feel the weight; because your decision is an awesome decision, it's a difficult decision to make.... And when you get *1096 home tonight with your family and friends, I want you to be able to say this, I heard the facts, I saw the evidence, I followed the Judge's instructions, I have weighed the circumstances, I've thought long and hard; I did what my oath as a juror required me to do."
The trial court charged the jury, in pertinent part, as follows:
"The sole judgment [sic] of the punishment in this case are you.... It is strictly up to you to fix the punishment in this case, based on the law that I am fixing to give to you.
". . . .
"... The aggravating circumstances that the State says exist in this particular case are as follows, listen carefully: first, that the capital felony was committed by a person under the sentence of imprisonment....
"Now, the other aggravating circumstance that the State says exists in this case, is that, that the capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or in the attempt to commit, or flight after committing, or attempting to commit rape, robbery, burglary, or kidnapping for ransom. The State says in this particular case that this defendant was in fact at the time of the commission of this capital offense in the act or in the flight from the commission of the offense of robbery....
". . .
"... You may not consider any aggravating circumstance, as I said before, other than the two that I have set out at this time, the two that I have read to you. Those are the only two that you may consider....
". . .
"The law of this State provides a list of mitigating circumstances, which you may consider. But that list is not a complete list of mitigating circumstances that you may consider. There are others and I will instruct you on them at this time. I will now read to you a list of these mitigating circumstances; and this list of mitigating circumstances which you may consider in this case are as follows, there is, as the attorneys have told you, seven mitigating circumstances offered by the defendant."
The trial court then charged the jury on the seven non-statutory mitigating circumstances set out in the above argument of defense counsel. The court then continued, as follows:
"I am just telling you ... the aggravating circumstances that the State relies on, and the mitigating circumstances that the defendant relies on, so that you can determine whether or not any of those circumstances actually exist. All of that is strictly up to you, ladies and gentlemen of the jury, to determine whether or not any of the aggravating or mitigating circumstances exist.
"Now, in addition to the mitigating circumstances, that I have just read to you, you may also consider as mitigating circumstances any aspect of the defendant's character and life, and any of the circumstances of the capital offense that tend to indicate that the defendant should not be sentenced to death. A mitigating circumstance does not have to be included in the list that I have read to you in order for it to be considered by you. A mitigating circumstance considered by you should be based on the evidence that you have heard. If you are satisfied from the evidence presented that a mitigating circumstance does exist in this case, then you may consider it. A mitigating circumstance must merely be proven to your satisfaction, and not beyond a reasonable doubt for you to consider it. Only aggravating circumstances must be proven beyond a reasonable doubt. So, mitigating circumstances must be proven to your satisfaction; aggravating circumstances must be proven beyond a reasonable doubt; that is the degree of proof for the two.
"Now, as I told you before, you are to base your verdict in this case on the evidence. Well, what is the evidence? Well, all of these exhibits that will go back to the jury room, that is evidence in the case. But most important of all, the testimony of the witnesses that testified *1097 here, that's evidence in the case. And in this particular case most all of the evidence that came before you was from witnesses.
". . . .
"... Both the State and the defendant have agreed that I submit to you, one for the State and one for the defendant, a list of these circumstances setting out the various aggravating and mitigating circumstances. This is being done by both sides in order that you will have back in the jury room a list of the circumstances, the aggravating and mitigating circumstances....
". . .
"You will have both of these lists back in the jury room so you can compare and see which ones have been proven and which ones have not been proven. ... Now, it is up to you to decide whether they have been so proven; and if so proven, it is up to you to weigh the aggravating and mitigating circumstances in arriving at your verdict in this case."
Upon conclusion of the court's oral charge, the parties stated that they were satisfied.
Appellant argues that the prosecutor urged the jury to give little weight to the non-statutory mitigation offered by the defense because it was not of the same stature as the statutory mitigation contemplated by the legislature and that the prosecutor further urged the jury to weigh this against the defendant in its sentence determination. We do not agree with this assessment of the prosecutor's argument, for we do not believe that the prosecutor's argument can reasonably be interpreted in this manner. He did not belittle or devalue the evidence of non-statutory mitigation but, on the contrary, urged consideration of it by the jury. Appellant also argues that the prosecutor urged the jury to consider the non-existence of statutory mitigating circumstances against the defendant in its weighing of the aggravating and mitigating circumstances. Again, we do not agree with appellant's conclusion. We do not read the prosecutor's argument to say this.
It is true that the prosecutor reviewed the evidence, or lack thereof, as to each mitigating factor listed in the capital punishment statute. Appellant argues that these comments were improper because they led the jury to believe that the defendant's failure to prove statutory mitigation was to be held against him. In other words, appellant contends that the lack of evidence of statutory mitigating circumstances was urged as an aggravating circumstance itself. While we do not necessarily approve of this type of prosecutorial argument, we do not find it improper in this case when viewed in the context of the jury argument as a whole. The prosecutor did not argue that the lack of evidence of statutory mitigation should be considered by the jury as an aggravating circumstance. Nor do we believe that he intended to make such an argument. It appears that the argument was simply a way of leading into a discussion of the facts in evidence and reasonable inferences to be drawn therefrom. Under the circumstances, and particularly in view of the court's oral charge, we do not believe that the jury was misled by the prosecutor's approach or reached the conclusion urged by appellant.
In People v. Davenport, one of the cases upon which appellant relies in support of his argument, the California Supreme Court held that, in the penalty phase of a capital case, the prosecutor improperly argued that the absence of certain potential mitigating factors showed that the defendant acted calmly, deliberately, and of his own free will when he committed the murder.[2] 41 Cal.3d at 289, 710 P.2d at 888, 221 Cal.Rptr. at 821. The court considered the *1098 prosecutor's focus on the lack of evidence to support a particular mitigating factor to metamorphose the lack of the mitigating factor into an aggravating factor for the jury to consider. The court concluded that the form of the prosecutor's argument was likely to confuse the jury as to the meaning of aggravation and mitigation under the statute and was therefore improper under Cal.Penal Code  190.3, which provides, in part, that the trier of fact shall take into account any of the eleven enumerated factors "if relevant."[3]
In our consideration of the possible persuasiveness of the court's holding in Davenport, we look to that court's later interpretation of Davenport, which is found in People v. Rodriguez, 42 Cal.3d 730 [1221A], 726 P.2d 113, 230 Cal.Rptr. 667 (1986). There, the court first considered the prosecutor's following closing comments about the presence of the sentencing factor "[t]he age of the defendant at the time of the crime,"  190.3(i):
"`[A]ppellant's age is a factor. He was 23 years old at the time of these offenses. He was old enough to know better. He was old enough to be a productive member of our society. He was old enough to know that he need not be a social anarchist, which I think the evidence shows him to be. He was old enough to kill.'"
42 Cal.3d at 788, 726 P.2d at 151, 230 Cal.Rptr. at 705. In response to the appellant's claim that these remarks suggested that his age was to be considered as aggravating, even though age can only be considered as mitigating, the court observed the following:
"In Davenport, supra, we indicated it is improper to instruct or argue that the absence of evidence of a statutory mitigating factor is itself aggravating on the issue of penalty. As we explained, the purpose of `aggravating' and `mitigating' factors is to assess the seriousness of a capital crime in relation to others of the same general character. The mere absence of a mitigating element may weigh against a finding that the instant offense is less serious than `normal,' and thus especially deserving of mercy, but it does not suggest that the crime is more serious than `normal,' and thus especially deserving of death. Indeed, `[s]everal of the statutory mitigating factors are particularly unlikely to be present in a given case. ... To permit consideration of the absence of these factors as aggravating circumstances would make these aggravating circumstances automatically applicable to most murders.' (41 Cal.3d at p. 289, 221 Cal.Rptr. 794, 710 P.2d 861.)
"We agree, as appellant suggests, that mere chronological age, a factor over which one can exercise no control, should not of itself be deemed an aggravating factor. However, the sentencing jury is entitled to know that a defendant's crime lacks certain elements the state deems relevant to leniency in the choice of penalty. Thus, we see no impropriety in prosecutorial argument that a defendant is less deserving of leniency (as opposed to more deserving of death) than a younger, perhaps less sophisticated offender.
"The argument challenged here was thus within permissible bounds. It suggested only that appellant, like all adults, was fully responsible for his criminal acts and thus not deserving of the special deference to youthful impulsiveness. It did not declare affirmatively that appellant's chronological maturity weighed in favor of the death penalty, rather than life without parole. We conclude that the instant argument did not contravene Davenport."

Id. (emphasis in original).
The court addressed additional remarks made by the prosecutor, wherein the prosecutor considered applicability of the penalty factor whereby the jury determines "whether or not the offense was committed under circumstances which the defendant *1099 reasonably believed to be a moral justification or extenuation for his conduct,"  190.3(f). These remarks are, as follows:
"`The next factor is equally meaningless. It provides a contrast, I think, to the kind of situation you might have in this case, but you don't have and that factor is whether or not the offense was committed under circumstances where the defendant reasonably believedÔÇöwhich the defendant reasonably believed to be a moral justification or extenuation for his conduct.
"`The absence of that factor, the absence of that factor speaks loudly. The absence of the slightest bit of moral justification or extenuation, the absence of a shred of evidence of that strangulates what might be a factor that mitigates, that speaks in the defendant's favor, that cries out against his conduct.'"
42 Cal.3d at 789, 726 P.2d at 152, 230 Cal.Rptr. at 706. The appellant asserted a violation of Davenport, by contending that while a reasonable belief in moral justification is a mitigating factor, the absence of this belief is not a factor in aggravation. In response, the court held that these remarks did not contravene the Davenport holding, for "the prosecutor did no more than suggest the inapplicability of a mitigating factor." Id. (emphasis in original). The court continued,
"Never did the prosecutor say or imply that the absence of evidence on moral justification was a factor in aggravation, or that it tipped the penalty balance toward death. We do not believe his remarks, fairly construed, carried any significant danger of misleading the jury in that respect. We see no grounds for reversal."
Id.
We consider the prosecutorial remarks of the instant case to be more like those made by the prosecutor in Rodriguez. We find that, by his remarks, the prosecutor was not suggesting that appellant's offense was more serious than "normal," but rather that his crime lacked certain elements relevant to the prosecution's plea against leniency. The prosecutor was merely presenting his version of the facts to show, not that appellant was more deserving of death, but that he was less deserving of leniency. We further cannot construe the prosecutor's remarks as an argument that the lack of evidence of our statute's enumerated mitigating circumstances is to be construed as additional aggravating circumstances. As in Rodriguez, the comments at bar squarely refuted the presence of mitigating circumstances with solid facts which were properly reiterated to the jury. The jury could not have been misled. Accordingly, we find that the instant remarks were not improper.
In rejecting appellant's claim, we have also analyzed State v. Buck, cited by appellant, and do not find that it supports appellant's contention, especially in light of the subsequent case of State v. Carter, 714 S.W.2d 241 (Tenn.1986).

B
Appellant claims that the prosecutor in argument to the jury improperly injected his personal opinions and matters outside the record.

1
He first contends that the prosecutor improperly expressed his personal opinion and injected facts outside the record regarding deterrence. The specific argument called into question is as follows:
"Can those who are against capital punishment guarantee to you that their position will not result in the future loss of lives of innocent people anywhere? They can't make that guarantee to you. Another thing is also clear, capital punishment, that is the imposition of the death penalty is no deterrent to crime if it is never imposed; because criminals have nothing to fear. If they can come in and give their life story and escape, other criminals are going to see this; the criminal community knows about the death penalty, I assure you. They know, that like in this case, if you are robbing someone and take that person's life, you are looking at capital punishment, you are looking at the death penalty. And if for no other reason, that reason alone, *1100 the fact that the death penalty is in existence may save lives."
It is proper to argue deterrence in a sentencing phase closing argument. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Brooks v. Kemp, 762 F.2d 1383 (11th Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986); Ex parte Waldrop, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); Varner v. State, 418 So.2d 961 (Ala.Cr.App.1982); Cook v. State, 369 So.2d 1243 (Ala.Cr.App. 1977), aff'd in part, rev'd in part on other grounds, 369 So.2d 1251 (Ala.1978). It is appropriate for a jury, in deciding whether to impose the death penalty, to consider whether or not the general deterrence purpose of the statute would be served thereby. Brooks v. Kemp. We do not agree with appellant's arguments that the comments of the prosecutor diverted the jury's attention from the relevant evidence of aggravation and mitigation and created the risk that the jury was influenced to impose the death sentence by fear and outrage, not toward appellant, but toward criminal defendants in general. We view the prosecutor's argument as a general argument of deterrence and within the latitude allowed in urging the jury to discharge its duties in such a manner as not only to punish crime, but also to protect the public from like offenses and to set forth an example to deter others from committing like offenses. The case of People v. Szabo, 94 Ill.2d 327, 68 Ill.Dec. 935, 447 N.E.2d 193 (1983), cited by appellant, is clearly distinguishable. In Szabo, the prosecutor injected detailed statistics which were not in evidence, and his argument went far beyond the general argument of deterrence which was expounded in the instant case.

2
Appellant next contends that the prosecutor improperly argued that the .32-caliber murder weapon was a "Saturday night special" and that prison was a "college of crime." Referring to the .32-caliber murder weapon, the prosecutor stated the following:
"According to me it's a Saturday Night Special. These are guns that are designed to do nothing but kill people. ... But this is a Saturday Night Special, or I guess in this case more appropriately a Christmas Eve Special. ... [T]hey've got this Saturday Night Special out there...."
In making reference to prison as a "college of crime," over the span of his closing remarks, the prosecutor argued the following to the jury:
"Of course, he learned how to get money in prison; prison is sometimes referred to as the college of crime, which is a pretty apt description. ...
". . .
"... Because this defendant learned one thing in that college of crime that he had been to; and this is, you don't leave your victim alive to identify you.... [T]his defendant having been to the college of crime, wants to make sure that he is dead."
During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference. Milton v. State, 417 So.2d 620 (Ala.Cr.App.1982). We view the above remarks of the prosecutor as comments on matters of general knowledge and reasonable inferences to be drawn from the evidence presented. Moreover, defense counsel did not interpose any timely objection to any of the remarks in issue. We do not find this argument to have been improper or to have prejudiced the rights of appellant.

3
Appellant next contends that the prosecutor engaged in improper argument by mentioning to the jury that the news media would report its decision; that appellant had been represented by lawyers from the Southern Poverty Law Center, who had done a good job and had obtained witnesses from distant places; that an article in Time magazine had made appellant a celebrity; that some of appellant's letters, which were introduced in evidence, did not appear to be *1101 in his handwriting; and that appellant might argue his own case to the jury.
In reviewing the propriety of these comments, we are guided by the following:
"We adopt the language of the court in Brown v. Swineford, 44 Wis. 282 [28 Am.Rep. 582], that `it is error sufficient to reverse a judgment, for counsel, against objection, to state facts pertinent to the issue and not in evidence, or to assume, arguendo, such facts to be in the case, when they are not;' and if the statement be of facts which would not be legal evidence, if offered as such, yet, if their natural tendency is to influence the finding of the jury, the same rule would apply. We sum up, lest we be misunderstood.... The statement must be made as of fact; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury; or the case is not brought within the influence of this rule. ... It is only when the statement is of a substantive, outside factÔÇöstated as factÔÇöand which manifestly bears on a material inquiry before the jury, that the court can interfere, and arrest discussion."
Cross v. State, 68 Ala. 476, 484 (1881) (citations omitted, emphasis added). See also Argo v. State, 282 Ala. 509, 213 So.2d 244 (1968); Clark v. State, 462 So.2d 743 (Ala.Cr.App.1984). In the context of this case, we do not find the comments improper, for they do not come within the purview of the cited rule; they were not pertinent to the issues and they did not have a tendency to influence the jury in recommending sentence. While we do not necessarily approve of some of the character of the comments, we would not be warranted in reversing the judgment appealed from, for the reason that we are of the opinion that such arguments, when considered in the light of the evidence and circumstances of the case, were not improper.

C
Appellant contends that the prosecutor improperly appealed to the passions and prejudices of the jury in his closing argument. In addition to specifically referring to the comments about the victim's family and about the deterrence effect of capital punishment, which we have already addressed, appellant objects to the argument, "and but for a lot of good police work and for all we know, this defendant might be out in another parking lot looking for another victim at this very time." He argues that these remarks created a grave risk that the jury would be influenced to impose the death penalty out of fear and a sense of outrage, not toward this particular defendant and his acts, but toward criminal defendants in general. We disagree. The fact that an argument has emotional overtones does not independently indict it as improper, and the propriety of argument rests primarily in the relation of its content to issues relevant to the sentencing jury's concern. Brooks v. Kemp. We view the above arguments as being a general appeal for law enforcement and justice, and an appeal to the jury to discharge its duties in such a manner as to punish for the commission of crime and to deter others from committing like offenses. Ex parte Waldrop. The arguments were directed to a relevant sentencing concern of the jury, they were not delivered in an excessive and intolerable manner, and they did not divert the jury's attention from its proper function. Brooks v. Kemp.

D
Appellant contends that all of the prosecutor's arguments at issue violated the standard for prosecutorial argument in death cases enunciated in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). We have reviewed the Caldwell standard, and we are convinced that the enumerated comments "had no effect on the sentencing decision" and, thus, "that decision does ... meet the standard of reliability that the Eighth Amendment requires." 472 U.S. at 341, 105 S.Ct. at 2646. We find that the allegedly erroneous comments in issue had no improper impact or influence upon the jury's determination. A review of the trial court's instructions to the jury, as well as the *1102 entire arguments of counsel, reinforces our conclusion. The trial court's instructions to the sentencing jury were explicit and unambiguous. The trial court correctly charged the jury on the aggravating and mitigating circumstances as stipulated by the parties. Appellant was satisfied with the charge and did not ask for corrections or additional instructions. The jury, by the parties' agreement, had the written stipulated aggravating and mitigating circumstances before it during its deliberations. The circumstances in their entirety convince us that the jury's sentencing recommendation meets the Eighth Amendment's standard of reliability.

III
Appellant next challenges the trial court's sentencing order (see Appendix) in which the court found that the aggravating circumstances outweighed the mitigating circumstances and, thereafter, imposed a sentence of death as recommended by the sentencing jury. The pertinent portions of the sentencing order at issue are as follows:
"This Court further finds beyond a reasonable doubt, as aggravating circumstances in this case, that at the time of the commission of this capital felony, the Defendant was under sentence of imprisonment being under parole from the Alabama State Penitentiary and that this capital felony was committed while the Defendant was engaged in flight after committing the crime of robbery.
"The Court has carefully and diligently searched the evidence in this case for mitigating circumstances and finds that the Defendant has no record of criminal convictions for crimes involving force or violence to persons and that he has family and friends who care about him and have relationships with him that are beneficial to the Defendant and to them.
"This was a cold blooded and senseless killing committed knowingly and intentionally by the Defendant, a paroled convict, without any mercy for his victim whatsoever, for the heartless purpose of preventing this victim of a robbery from ever testifying against the Defendant. The Court finds that the aggravating circumstances of the intentional killing in this case far outweighed the mitigating circumstances found by the Court."
Appellant has raised three issues regarding the above-quoted portion of the sentencing order.

A
Appellant cites the third paragraph of the order to support his argument that the trial court improperly considered non-statutory aggravating circumstances in sentencing appellant to death. Appellant relies on Ex parte Johnson, 399 So.2d 873, 874 (Ala. 1979), in which the Alabama Supreme Court interpreted  13-11-6(5) (repealed),[4] which provides, "The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody." The court stated as follows:
"One interpretation of this provision would enable it to be applied in all felony cases in which death has ensued, for it could be said that one of the purposes of inflicting any death would be to prevent identification by the victim. ... Utilizing the clear language of the provision to determine the circumstances to which it is applicable we conclude that it applies to `lawful arrest' or `escape from custody' situations."
Id. Appellant contends that the trial court's statement that "[t]his was a cold blooded and senseless killing ... without any mercy ... for the heartless purpose of preventing this victim of a robbery from ever testifying" constituted a finding by the court of "non-statutory aggravation borrowed from two statutory aggravating circumstances that were not presented by the state or considered by the jury: those *1103 of Section 13A-5-35(5) and (8)[5] of the Alabama Code (1975)." (Brief, p. 45.) Appellant argues that it was improper for the court to consider these "non-statutory aggravating circumstances" because, as stated in Johnson, these findings could be made in virtually every capital case.
It is true that the statements made by the trial court in paragraph three of its sentencing order could possibly be applied to a great many capital cases; however, the facts of this case support the court's statements, which we believe are merely the court's editorial comments on the evidence presented. It is entirely proper for the trial court to consider all the facts presented by the evidence in imposing sentence.  13A-5-32. A logical reading of the sentencing order demonstrates that the trial court first made findings of the presence of aggravating circumstances (paragraph one) and then findings of mitigation (paragraph two), and then in paragraph three, he considered the facts of the case and weighed the aggravating and mitigating circumstances. Moreover, we presume that the trial court also followed the instructions it gave to the jury which charged that only the two designated aggravated circumstances could be considered.
When paragraph three is read in conjunction with paragraphs one and two, it is clear to us that the trial court, in imposing the death sentence, only considered the two aggravating circumstances enumerated in  13A-5-35 (1) and (4), which was entirely proper. We are not convinced that the contested language of paragraph three constitutes a finding by the court of a nonstatutory, aggravating circumstance.

B
The State offered evidence of two statutory aggravating circumstances, and appellant offered evidence of seven non-statutory mitigating circumstances. The parties entered into a stipulation in which they agreed that these two aggravating and seven mitigating circumstances would be all that was submitted to the jury. The court accepted the stipulation and instructed the jury that appellant had offered evidence of seven mitigating circumstances for its consideration and, further, that it would be authorized to consider any other mitigating circumstance it deemed was established by the evidence.
In its sentencing order, the trial court found the existence of the two aggravating circumstances and two of the seven mitigating circumstances outlined in the stipulated agreement. Appellant argues that "[b]ecause defendant established all seven mitigating circumstances that were submitted to the jury, the trial court's failure to find five of the seven was erroneous and tipped the sentencing balance unfairly in favor of the state." (Brief, p. 48.)
Appellant's argument that the trial court should have found each of the seven mitigating factors offered is without merit. The fact that an accused has offered evidence of a non-statutory mitigating circumstance does not automatically require the trial court to weigh that evidence as a mitigating circumstance. Cochran v. State, 500 So.2d 1161 (Ala.Cr.App.1984), aff'd in part, remanded on other grounds, 500 So.2d 1179 (Ala.1985), aff'd on return to remand, 500 So.2d 1188 (Ala.Cr.App.), aff'd, 500 So.2d 1064 (Ala.1986); Harrell v. State, 470 So.2d 1303, 1308 (Ala.Cr.App. 1984), aff'd, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). The sentencing authority has unbridled discretion in its determination of what does, or does not, constitute mitigating circumstances and can assign whatever weight it deems appropriate to these factors. Cochran; Harrell.
"The fact that the sentencing order does not refer to the specific types of non-statutory `mitigating' evidence petitioner introduced indicates only the trial court's finding the evidence was not mitigating, not that such evidence was not considered.... *1104 What one person may view as mitigating, another may not."
Dobbert v. Strickland, 718 F.2d 1518, 1524 (11th Cir.1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984) (quoted with approval in Cochran, 500 So.2d at 1176).
Appellant further specifically argues that the trial court's failure to find as a mitigating factor his deprived family background demonstrates the court's failure to take this aspect of appellant's background into account. Appellant relies on Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 621, 98 S.Ct. 2981, 57 L.Ed.2d 1000 (1978); and Clisby v. State, 456 So.2d 99 (Ala.Cr.App.), aff'd on return to remand, 456 So.2d 102 (Ala.Cr.App.1983), aff'd, 456 So.2d 105 (Ala.1984), cert. denied, 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391 (1985), to argue that the trial court was required to find appellant's family history as a mitigating circumstance. These cases do not stand for the proposition that the sentencing authority must find the defendant's family history as a mitigating factor; rather, they merely stand for the principle that the sentencing authority may not be precluded from considering any mitigating factor, which would include a difficult family history. See our discussion of Eddings and Lockett in Clisby, 456 So.2d at 101-02.
The fact that all seven of the nonstatutory mitigating circumstances were not listed in the sentencing report is by no means conclusive that all seven were not considered. Foremost, from the instructions given to the jury by the trial court, we can presume, in the absence of evidence convincing us otherwise, that the trial court considered the non-statutory mitigating circumstances urged by appellant since the trial court is to follow these instructions also. Ex parte Harrell, 470 So.2d 1309, 1318 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985); Ex parte Dobard, 435 So.2d 1351, 1358 (Ala. 1983). Our duty, as it pertains to this issue, is to determine if the record supports a conclusion that the trial court considered the evidence offered in support of mitigation. See Cochran, 500 So.2d at 1187. We note that Cochran was remanded to the trial court with directions to enter specific written findings on the existence or nonexistence of each statutory and non-statutory "mitigating circumstances of which evidence is offered." Id. Cochran was based on this court's similar disposition of Clisby v. State, 456 So.2d at 102. See Cochran, 500 So.2d at 1187. In both Cochran and Clisby, the trial court's sentencing order found "no mitigating circumstances." Cochran, 500 So.2d at 1186; Clisby, 456 So.2d at 100. Based on these sentencing orders, this court in Clisby and the Alabama Supreme Court in Cochran could not determine whether the trial court "considered" the evidence offered in support of mitigation. Cochran, 500 So.2d at 1187; Clisby, 456 So.2d at 102. However, in the case sub judice, we are not confronted with such a dilemma, for it is clearly evident from the sentencing order and the record that the trial court considered all evidence offered in support of mitigation. We derive this conclusion from the trial court's sentencing order wherein the court states that it "has carefully and diligently searched the evidence in this case for mitigating circumstances"; from the court's finding of two mitigating circumstances set forth in stipulation; from the trial court's acceptance of the stipulations which appellant and the State entered; from the trial court's instructions to the jury regarding its authority to consider mitigating factors supported by evidence offered by appellant; and from the court's statement, prior to imposing sentence, "I have reviewed in particular all of the aggravating circumstances and all of the mitigating circumstances offered during those two trials." We find that the sentencing order and the record of the proceedings in the instant case clearly establish that the trial court considered all the evidence offered in support of mitigation; however, the court only found two non-statutory mitigating circumstances which it accorded any weight. Appellant's appellate counsel, in oral argument, conceded that, from the court's order, arises the implication that the court did, in fact, consider all seven non-statutory mitigating *1105 circumstances and rejected five of those. We find no error in the court's failure to find the additional five factors as mitigating circumstances.

C
Appellant's final contention is that the mitigating circumstances outweighed the aggravating circumstances and, therefore, that the trial court erred in holding otherwise. Appellant asserts that the trial court "gave too much weight to the statutory aggravating factors and not enough weight to the mitigation." (Brief, p. 53.) Of course, part of appellant's argument is based on his previously asserted contentions, which we have resolved adversely to appellant's position, that the trial court erroneously considered alleged non-statutory aggravating circumstances and failed to consider the five non-statutory mitigating factors for which he offered evidence.
In Clisby, 456 So.2d at 108, the Alabama Supreme Court explained, as follows:
"[T]he sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Cr. App.1983), rev'd on other grounds, 455 So.2d 72 (Ala.1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom, 716 F.2d 1511 (11th Cir.1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation."
We find that the trial court's findings were supported by substantial evidence. This court has held that the finding of one aggravating circumstance is sufficient to support a sentence of death. See, e.g., Murry v. State, 455 So.2d 53, 67 (Ala.Cr.App. 1983), rev'd on other grounds, 455 So.2d 72 (Ala.1984). After a thorough review of the record, we are of the opinion that there is no possible claim of error in the trial court's weighing of the evidence.

IV
At the sentencing hearing, appellant was represented by court-appointed counsel employed by the Southern Poverty Law Center. Appellant filed a pretrial motion to prohibit the prosecution from questioning potential jurors about the Law Center. He asserted therein the following: "A large portion of the cases handled by the Law Center involve civil rights litigation and defense of capital crimes. For this reason, the Law Center is unpopular with the majority of the general population. Accordingly, questions concerning the Law Center carry the potential for influencing prospective jurors against the defendant." There is absolutely nothing in the record to support these assumptions, and nothing was offered at the hearing on this motion to support these statements. Appellant further asserted, in his motion and at the hearing, that the State could simply ask the venire members whether they were acquainted with any individual attorney, by name, employed by the Law Center, in order to discover any connection between a prospective juror and the Law Center. The prosecution objected to the motion, asserting that this method would unduly limit its ability to discover prior relationships between venire persons and the Law Center. The court denied appellant's motion at the conclusion of the hearing.
It is clearly the law in this state that "each party has the right to have questions formulated by it propounded to the jury, either by the court or by the party as the court may determine, if such questions reasonably relate under the circumstances to the question of the qualification or interest or bias on the part of prospective jurors." Griffin v. State, 383 So.2d 873, 876 (Ala.Cr. App.), cert. denied, 383 So.2d 880 (Ala. 1980). "The purpose of the voir dire examination is to discover any matter that might tend to affect a juror's verdict and to afford *1106 the parties information relating to the qualifications of the venire persons so that peremptory challenges may be intelligently made." Reeves v. State, 470 So.2d 1374, 1376 (Ala.Cr.App.1985). "The legal standard to be applied as regards voir dire questioning of the venire is the sound discretion of the court. The court determines how far counsel may go in asking questions of the jury on voir dire. The nature, the variety, and the extent of the questions are left to the trial court." Dawkins v. State, 455 So.2d 220, 222 (Ala.Cr.App.1984).
We find no abuse of the trial court's discretion in allowing the prosecution to question the venire about any affiliation anyone might have with the Law Center. We are certainly not persuaded that the types of cases handled by the Law Center are so unpopular with "most segments of the population" of this state that an entire venire would be "potentially prejudiced against the defendant." Secondly, we do not believe that the mere listing of attorneys associated with the Law Center would effectively allow the prosecution to elicit the type of information it needs to intelligently exercise its right to peremptory strikes. It is very possible that an individual may have contacts with the Law Center and not be aware of the individual names of the attorneys employed therein. The information sought by the prosecution was clearly material to its right to exercise peremptory strikes. We hold that the trial court did not abuse its discretion when it denied appellant's motion to prohibit the prosecution from questioning the venire about the Law Center.
Appellant further argues that the trial court's abuse of discretion became readily apparent when eight members of the venire indicated they had heard of the Southern Poverty Law Center. Of these eight potential jurors, only one juror, Mr. Wear, indicated that he might be "prejudiced against that type organization." We do not believe that this one juror's opinion rises to the level of demonstrating that the trial court abused its discretion in denying the motion to prohibit mention of the Southern Poverty Law Center.

A
Appellant next alleges that the trial court erred in refusing to grant a challenge for cause as to prospective juror Wear and, thus, forcing appellant to use a peremptory strike to remove Wear from the jury. During the voir dire examination of Wear, the following occurred:
"(Whereupon, Juror William C. Wear was brought into the Conference Room, and the following proceedings were had outside the presence and hearing of the jury venire.)
"THE COURT: Have a seat right there. They want to ask you some questions.
"MR. MYERS [the prosecutor]: I have no questions.
"MR. BALSKE [defense attorney]: Mr. Wear, yesterday you indicated that you had some problems with lawyers who were associated with places like the Poverty Law Center. Where do you get that feeling from?
"JUROR WEAR: No, I didn't say that. I said that I was prejudiced against that type of organization.
"MR. BALSKE: Okay.
"JUROR WEAR: No lawyers, I have never really had any dealings with those type of organizations.
"MR. BALSKE: Okay. But you feel that you would be prejudiced against lawyers from that kind of organization?
"JUROR WEAR: It's possible.
"MR. BALSKE: Okay. And you realize that I am from that organization?
"JUROR WEAR: Yes, I do.
"MR. BALSKE: Do you think that would be a problem to you, might enter into the case, if you were chosen as a juror in the case?
"JUROR WEAR: I don't know.
"MR. BALSKE: You're just not sure?
"JUROR WEAR: I'm just not sure.
"MR. BALSKE: Okay. But if you got back there as a juror and listened to Mr. Myers argue to you, and listened to me argue to you, it might weigh in your decision?
"JUROR WEAR: It's quite possible.

*1107 "MR. BALSKE: As opposed to sifting the evidence, that might be another thing that might enter into the picture; is that correct?
"JUROR WEAR: I'm sorry I didn't understand you.
"MR. BALSKE: As opposed to simply looking at the evidence, this is something else that might enter into it?
"JUROR WEAR: It's possible, yes.
"MR. BALSKE: Surely, and I appreciate your honesty and candor. Your Honor, I would challenge for cause.
"MR. MYERS: Your Honor, anything's possible. There certainly hasn't been any cause shown whatsoever.
"THE COURT: Well, let me ask you this: could you sit on the trial of this case, and regardless of who represented who, could you still listen to the evidence in the case and base your verdict in the case solely on the evidence, regardless of who the lawyers were?
"JUROR WEAR: I would guess I would. I just don't know.
"THE COURT: All right. Well, I am going to deny that challenge for cause.
"MR. BALSKE: I'm not going to ask any more questions.
"THE COURT: Do you have any other questions?
"MR. MYERS: No, sir."
Appellant contends that juror Wear was so biased or prejudiced toward the Southern Poverty Law Center that he should have been subject to a challenge for cause. In Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala.1976), the court stated, as follows:
"Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised."
See also Village Toyota Company, Inc. v. Stewart, 433 So.2d 1150, 1156 (Ala.1983). As this court stated in Barbee v. State, 395 So.2d 1128, 1130-31 (Ala.Cr.App.1981):
"Generally, a juror is incompetent who has such personal opinions with respect to the subject matter of the suit, or conscientious scruples, on any subject, as would influence his verdict. The test to be applied is can the juror eliminate the influence of his scruples and render a verdict according to the evidence. Ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence notwithstanding his scruples. The determination of this question is based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Tidmore [v. City of Birmingham, 356 So.2d 231, 234 (Ala.Cr.App. 1977), cert. denied, 356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132 (1978) ]. A juror is incompetent whose answers show that he would follow his own views regardless of the instructions of the court. Watwood v. State, 389 So.2d 549, 550 (Ala.Cr.App.), cert. denied, 389 So.2d 552 (Ala.1980)."
In Tidmore, 356 So.2d at 234, it was explained:
"Thus, where jurors testify that they have opinions but that they would try the case fairly and impartially according to the law and the evidence, and that their opinions would not influence their verdict, those jurors are competent to serve.... To disqualify a prospective juror, he must have more than a bias, or fixed opinion, as to guilt or innocence of the accused. Such opinion must be so fixed... that it would bias the verdict a juror would be required to render."
To justify a challenge of a juror for cause, there must be a statutory ground ( 12-16-150, Code of Alabama 1975), or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court. Nettles v. State, 435 So.2d 146 (Ala.Cr.App), aff'd, 435 So.2d 151 (Ala. 1983). The trial court's ruling on challenges for cause based on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion. Price v. State, 383 So.2d 884 *1108 (Ala.Cr.App.), cert. denied, 383 So.2d 888 (Ala.1980).
In reviewing the facts of this case, applying the law regarding probable prejudice as set forth, we find that Wear's answers on voir dire did not establish an opinion or bias so absolute or fixed as to bias the verdict. Wear's responses to questioning by defense counsel and the trial court were too equivocal to indicate a fixed opinion. The trial court acted properly within its discretion in refusing to resort to speculation about how Wear's possible bias toward the Law Center would have affected his verdict. Wear never indicated an opinion about appellant's guilt or innocence, and the trial court was apparently satisfied that Wear would listen to the evidence and base his verdict solely on the evidence, regardless of who the lawyers were or for whom they worked. We point out that the trial court specifically asked the jurors, prior to the individual voir dire examination, if any of them knew of any reason why he or she could not sit on the case and render a fair and impartial verdict based solely upon the evidence, and Wear did not respond. The trial judge was in the best position to evaluate the demeanor of the juror and to "hear not only the words recorded by the court reporter but also the meaning actually conveyed by the responding prospective juror." Clark v. State, 443 So.2d 1287, 1289 (Ala.Cr.App.1983). We are not persuaded that the trial court clearly abused its discretion. See Heath v. State, 480 So.2d 26 (Ala.Cr.App.1985) (wherein the court held that the fact that a prospective juror had filed a disciplinary complaint against the defense counsel did not constitute ground for challenge for cause). We, therefore, find no error in the trial court's ruling.

B
Appellant next alleges that prospective juror Wear should have been excluded because his views on capital punishment "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath," quoting Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). Appellant bases this argument entirely on the unsupported contention that Wear's opinions of the Law Center were based "apparently" (as appellant states in brief) on the Law Center's "stand against the death penalty." (Brief, p. 61.) This contention is wholly without merit. The voir dire examination of Wear did not touch upon his views on capital punishment. Moreover, no challenge on that ground was asserted at trial. There is absolutely nothing in the record to suggest that Wear had any idea what stand the Law Center took on capital punishment. We will not engage in a fictitious application of Witt based on supposition. We find no basis upon which error could be predicated.

V
Appellant argues that Auburn University students were systematically excluded from the jury venire that was selected for his sentencing hearing. He alleges a violation of his Sixth and Fourteenth Amendment rights to a jury selected from a venire which represents a fair cross-section of the community. This same argument was addressed in our previous opinion of Rutledge, 482 So.2d at 1253-55, and decided adversely to appellant's position. Our decision in this regard was affirmed by the Alabama Supreme Court, although the case was remanded for resentencing. Ex parte Rutledge, 482 So.2d at 1263.
At the second sentencing phase, appellant filed a "Renewed Challenge to the Composition of the Petit Jury" and offered supplemental testimony in support of his motion. A hearing was held on this motion in which appellant presented his supplemental testimony, and the trial court subsequently denied the motion. We have thoroughly reviewed appellant's supplemental testimony and the testimony presented at his original trial and adhere to our previous determination that Auburn University students do not constitute a cognizable or distinctive class, pursuant to the requirements of Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 *1109 (1979); thus, we find no merit in this contention. See Rutledge, 482 So.2d at 1254.

VI
The trial judge who presided at appellant's original trial also presided at the second sentencing hearing. Appellant contends that the trial judge erred in failing to recuse himself at the second sentencing phase. At the hearing on appellant's motion, no evidence was offered. It was merely argued "that the same Judge who has already sentenced the capital client to death should be disqualified from again deciding on the sentence." The motion was overruled.
Appellant relies on the Alabama Canons of Judicial Ethics,  3 C(1), which states, in part, that a trial judge "should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned." Appellant argues that the trial judge's impartiality is questioned because he presided at appellant's original trial in which the court sentenced appellant to death. "A judge should not act `if he has any interest, the probable and natural tendency of which is to create a bias in the mind of the judge for or against a party to the suit.' Morgan County Commission v. Powell, 292 Ala. 300, 311, 293 So.2d 830, 839 (1974). ... A mere accusation of bias unsupported by substantial fact does not require disqualification of a judge. Taylor v. Taylor, 387 So.2d 849, 852 (Ala.Civ.App. 1980)." Ross v. Luton, 456 So.2d 249, 254 (Ala.1984). In this State, the general rule is that a judge is presumed to be qualified and unbiased, McMurphy v. State, 455 So. 2d 924, 929 (Ala.Cr.App.1984), and the movant has a substantial burden in proving otherwise. Irby v. State, 429 So.2d 1179 (Ala.Cr.App.1983). "Evidence must be presented to prove the judge possesses a personal bias as opposed to one that is judicial in nature. Personal as opposed to judicial bias is characterized by an attitude of extrajudicial origin derived non coram judice." Moreland v. State, 469 So.2d 1305, 1307 (Ala.Cr.App.1985). "Bias and prejudice must be shown by the conduct of the trial judge and may not be presumed or inferred by his subjective views." Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837, 841 (Ala. 1983). "The appellant must present evidence to prove the personal bias of a judge, or else his motion cannot prevail." Slinker v. State, 344 So.2d 1264, 1268 (Ala.Cr.App. 1977). On appeal, the trial judge's refusal to recuse himself will not be reversed in the absence of clear evidence of bias or prejudice. Moreland, 469 So.2d at 1307.
In McMurphy, 455 So.2d at 929, this court observed,
"As stated by the Alabama Supreme Court in the case of In re Raines [Raines v. State], 294 Ala. 360, 317 So.2d 559 (1975), `pretrial involvement or knowledge on the part of a trial judge does not necessarily create an unconstitutional risk [of] bias'. Id., at 366, 317 So.2d 559....
". . .
"... Nor is bias proved simply because the trial judge who presided at the second trial of defendant had also presided at his first trial and heard evidence later found to be inadmissible by an appellate court. Walker v. State, 38 Ala.App. 204, 84 So.2d 383 (1955)."
This court has found no error in a trial judge's refusal to recuse himself in cases involving the retrial of a capital offense. Giles v. State, [Ms. 6 Div. 86, January 10, 1984] (Ala.Cr.App.1984); Whisenhant v. State, 482 So.2d 1225, 1227 (Ala.Cr.App. 1982), aff'd in pertinent part, 482 So.2d 1241, 1245 (Ala.1983), rev'd on other grounds, 482 So.2d 1247 (Ala.), remanded for new sentencing hearing, 482 So.2d 1249 (Ala.Cr.App.1984). The result of Giles and Whisenhant is founded on the defendant's failure to prove bias on the part of the trial judge.
In the case sub judice, appellant offered no evidence to substantiate his assertion of personal bias by the trial judge. Appellant has, therefore, failed to rebut the presumption that the trial judge was qualified and unbiased. We find no error in the court's denial of appellant's motion.

*1110 VII
Appellant requested the following jury charge, which was refused by the trial court:
"In order to return a verdict of death, your verdict must be unanimous. That is, a verdict of death must be the verdict of each and every one of you, ladies and gentlemen of the jury. If the verdict is not unanimous, a sentence of life without parole will automatically be imposed."
This requested charge is substantially the same as the charge discussed in Whisenhant, 482 So.2d at 1236. In Whisenhant, we held that such a charge "concerned a procedural matter and was not a proper subject of instruction to the jury." Id. See also Giles, slip op. at 13; Rutledge, 482 So.2d at 1259; Coulter v. State, 438 So.2d 336, 346 (Ala.Cr.App.1982), aff'd, 438 So.2d 352 (Ala.1983). Our holdings in Rutledge and Whisenhant were affirmed by the Alabama Supreme Court. Ex parte Rutledge, 482 So.2d at 1263; Ex parte Whisenhant, 482 So.2d at 1245.
Appellant here contends that our rulings in Rutledge, Whisenhant, and Coulter conflict with the United States Supreme Court's ruling in California v. Ramos, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). In Ramos, the trial court had instructed the jury, at the sentencing phase, that the governor had the power to commute a sentence of life without possibility of parole to a lesser sentence that would include the possibility of parole. Id. at 996, 103 S.Ct. at 3450. Such an instruction, referred to as a "Briggs Instruction," is mandated by a California statute, Cal. Penal Code  190.3 (West.Supp.1983). Id. Defendant Ramos contested the giving of the "Briggs Instruction" at his trial, and the California Supreme Court reversed the sentence of the trial court on the theory that the instruction violated federal constitutional rights. Id. The United States Supreme Court reversed the California Supreme Court, holding that "the Eighth and Fourteenth Amendments do not prohibit such an instruction." Id. at 1014, 103 S.Ct. at 3460.
Appellant seeks to apply Ramos, by analogy, to the requested charge in the instant case. Appellant contends that Ramos mandates that a sentencing jury "be fully informed of all sentencing options," including the effect of a jury deadlock. (Brief, p. 78.) We find no such mandate in Ramos. As the Court reasoned,
"Finally, we emphasize that informing the jury of the Governor's power to commute a sentence to life without possibility of parole was merely an accurate statement of a potential sentencing alternative. To describe the sentence as `life imprisonment without possibility of parole' is simply inaccurate when, under state law, the Governor possesses authority to commute that sentence to a lesser sentence that includes the possibility of parole. The Briggs Instruction thus corrects a misconception and supplies the jury with accurate information for its deliberation in selecting an appropriate sentence."
Id. at 1009, 103 S.Ct. at 3457 (footnote omitted, emphasis in original). The Court further held,
"Our conclusion is not intended to override the contrary judgment of state legislatures that capital sentencing juries in their States should not be permitted to consider the Governor's power to commute a sentence. It is elementary that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires."
Id. at 1013-14, 103 S.Ct. at 3460 (footnote omitted). More recently, in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the Court noted that the Mississippi Supreme Court had interpreted Ramos "as if it had held that States are free to expose capital sentencing juries to any information and argument concerning postsentencing procedures." The Court concluded that this interpretation was "too broad a view of Ramos." Id.
The Alabama Supreme Court in Ex parte Rutledge, 482 So.2d at 1265, has observed that Ramos dealt with the constitutionality of a California statute which requires the *1111 "Briggs Instruction" in capital murder trials. The court stated:
"Not only do we have no such statute, but it has long been the law of this State that comments upon the probability or possibility of what might happen under a particular sentence, falling outside the evidence and the law of the case, constitute improper argument. Eaton v. State, 278 Ala. 224, 177 So.2d 444 (1965); see also Murray v. State, 359 So.2d 1178 (Ala.Cr.App.1978)."
Id. The above quoted passages make it readily apparent that Ramos has no application to the issues before us and does not constitute a basis for reversing our previous rulings.
We do not take issue with appellant's contention that a sentencing jury should be informed of all legitimate sentencing options; we do, however, disagree with appellant's assertion that a deadlocked jury constitutes a legitimate sentencing option. As we noted in Giles, slip op. at 13, 14: "The jury's duty during the sentencing-phase deliberations, for trials governed by Beck, is to attempt to reach a unanimous verdict for either `death' or `life imprisonment without parole.'" If the jury fails to reach a unanimous verdict "the jury's sentence recommendation shall be life without parole." Ex parte Hays, 518 So.2d 768, 775 (Ala.1986) (emphasis in original). We are of the opinion that if the jury were told that a deadlock would result in an automatic recommendation of life without parole, such information "may incline them to approach their sentencing decision with less appreciation for the gravity of their choice and for the moral responsibility reposed in them as sentencers." Ramos, 463 U.S. at 1011, 103 S.Ct. at 3459. We, therefore, reaffirm our previous holdings that the consequence of a deadlocked jury being a recommended sentence of life without parole is a procedural matter which is not the proper subject of an instruction to the jury.
We additionally observe that in Ex parte Hays, 518 So.2d at 775, the Alabama Supreme Court held "that the trial court is empowered to override the jury's sentence recommendation of life without parole" and that that court's decision in Beck v. State, 396 So.2d 645 (Ala.1980), had not intended any other result. The court stated that the trial court's authority to override the jury's recommendation of a sentence of life without parole "is implied as a necessary and logical consequence to our holding in [Beck]." Id. at 775. Therefore, that portion of the jury charge, which stated "[i]f the verdict is not unanimous, a sentence of life without parole will automatically be imposed," is improper as a matter of law, according to Hays. The trial court correctly refused the requested charge.

VIII
Appellant's final contention is that the trial court erred in refusing the following requested jury charge:
"I instruct you that the defendant does not have the burden of proving to you that the mitigating circumstances outweigh aggravating circumstances. Any mitigating circumstance(s) whether it outweighs aggravating circumstances or not, may support a verdict of life in prison without the possibility of parole."
Appellant concedes that the refusal to give similar instructions has been upheld by this court in Whisenhant, 482 So.2d at 1234-36, which was affirmed in Ex parte Whisenhant, 482 So.2d at 1245. Appellant does not assert any grounds upon which to distinguish our holding in Whisenhant; rather he states that he raises this issue in order to pursue arguments in federal court, if necessary.
We find that this instruction was properly refused. The requested instruction consists of two separate parts, both of which constitute improper statements of law. The first part instructs the jury that the defendant does not have the burden of proving that mitigating circumstances outweigh aggravating circumstances, implying that the State bears this burden. In Whisenhant, 482 So.2d at 1235, we quoted favorably from Ford v. Strickland, 676 F.2d 434, 442 (11th Cir.1982):
"While the existence of an aggravating or mitigating circumstance is a fact susceptible *1112 to proof under a reasonable doubt or preponderance standard, ... the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party." (Citations omitted, emphasis in original.)
The opinion at 676 F.2d 434 was later vacated by an en banc decision, 696 F.2d 804 (11th Cir.), cert. denied, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); however, the en banc opinion contained the same statement quoted in Whisenhant, 696 F.2d at 818. Since the weight to be accorded facts in evidence is not susceptible to proof by either party, the first part of appellant's requested instruction was incorrect and confusing.
The second portion of the requested charge would have instructed the jury that any mitigating circumstance could support a verdict of life without parole. In Whisenhant, 482 So.2d at 1236, we concluded, the following: "Clearly, it is the duty of the jury to weigh mitigating and aggravating circumstances in its decision. The jury is not free, as appellant's charge suggests, to arbitrarily ignore any factor, positive or negative, in arriving at the correct sentence." The effect of this portion of appellant's requested charge, in effect, negates the weighing process discussed in Whisenhant, and is, therefore, an incorrect statement of the law.
Based on the reasons stated above, the trial court correctly refused the requested instructions.

IX
Having addressed all issues raised by appellant, we now review the record of these proceedings in accordance with the requirements of A.R.A.P. 45A, Beck v. State, 396 So.2d 645 (Ala.1980), and  13A-5-53, Code of Alabama 1975.
The scope of our review in death cases is set out in A.R.A.P. 45A, as follows:
"In all cases in which the death penalty has been imposed, the court of criminal appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
We have followed this standard of review in the instant case, have reviewed the entire proceedings, and have found no plain error or defect.
In reviewing appellant's death sentence, as we are required to do in this case, by the three-tiered analysis of Beck v. State, we make the following findings: First, appellant was convicted of "[r]obbery ... when the victim is intentionally killed by the defendant,"  13A-5-31(a)(2), Code of Alabama (Supp.1978) (repealed July 1, 1981). This offense is, by statutory definition and designation, a capital offense. Second, we take judicial notice that similar crimes are being punished capitally throughout this state. Beck v. State, 396 So.2d at 654, n. 5 (two-thirds of death sentences imposed in Alabama are in robbery-murder cases); see also, e.g., Ex parte Womack, 435 So.2d 766 (Ala.1983), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983); Nicks v. State, 521 So.2d 1018 (Ala.Cr.App.1987); Thomas v. State, 460 So.2d 207 (Ala.Cr. App.1983), aff'd, 460 So.2d 216 (Ala.1984); Waldrop v. State, 459 So.2d 953 (Ala.Cr. App.1983), aff'd, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); Weeks v. State, 456 So.2d 395 (Ala.Cr.App.1983), aff'd, 456 So. 2d 404 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985); Luke v. State, 444 So.2d 393 (Ala.Cr.App.), aff'd, 444 So.2d 400 (Ala.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984); Coulter v. State, 438 So.2d 336 (Ala.Cr.App.1982), aff'd, 438 So.2d 352 (Ala.1983); Bush v. State, 431 So.2d 555 (Ala.Cr.App.1982), aff'd, 431 So.2d 563 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). In reference to the third determination, Beck requires us to examine the penalty imposed upon the defendant in relation to that imposed upon his accomplice, if any. Appellant had three accomplices in the commission of the crime: Billy M. Threats, Alvin Morgan, and Rayfield *1113 Davis. The records in the office of the Clerk of the Circuit Court of Lee County, of which we take judicial notice, reflect that Billy M. Threats was indicted for the capital murder-robbery; found guilty, after a jury trial, of the lesser included offense of murder; and sentenced on October 8, 1981, to life imprisonment and ordered to make $2,345 restitution to the estate of the victim. Alvin Morgan was indicted for the capital offense of murder-robbery; pleaded guilty to the charge of murder embraced in the indictment; and was sentenced on October 1, 1981, to twenty-four years in the penitentiary, ordered to make $2,345 restitution to the estate of the victim, pay $212 court costs, and reimburse the State $1,000 for attorney's fees. Rayfield Davis was indicted for the capital offense of murderrobbery; pleaded guilty to the charge of murder embraced in the indictment; and sentenced on October 1, 1981, to life imprisonment, ordered to make $2,345 restitution to the estate of the victim, pay $384 court costs, and reimburse the State $1,000 for attorney's fees. None of the accomplices' convictions was appealed.
Appellant makes no contention of disproportionality between his sentence of death and the sentences of his accomplices. The most distinguishing feature between appellant's participation in the crime and the participation of his accomplices is that he was the "triggerman." After some discussion between the robbers at the scene of the crime about what to do with the victim and the victim's knowing some of them, appellant fired several shots into the victim's body, while the victim begged for his life. Shortly after shooting the victim, appellant returned to the body and fired more shots into it. Alvin Morgan testified at the guilt phase of the trial that, during the robbery, appellant stated that the victim knew him, and that appellant fired the shots killing the victim. The fact that appellant was the triggerman is not disputed. In view of the evidence that it was appellant who fired the fatal shots and that his culpability was greater than that of his accomplices, imposition of the death penalty in his case was not disproportionate to the sentences received by the accomplices. Wright v. State, 494 So.2d 726 (Ala.Cr.App. 1985), aff'd, 494 So.2d 745 (Ala.1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1331, 94 L.Ed.2d 183 (1987); Williams v. State, 461 So.2d 834 (Ala.Cr.App.1983), rev'd on other grounds, 461 So.2d 852 (Ala.1984). We find that appellant's sentence was not disproportionally severe. Finally, our independent weighing of the aggravating and mitigating circumstances convinces us that the sentence of death is appropriate in relation to this appellant.
After hearing evidence concerning aggravating and mitigating circumstances; after being properly instructed by the trial court on the applicable law; and after being correctly advised on its function in reference to the finding of aggravating and mitigating circumstances, if any, the weighing of same if appropriate, and its responsibility in reference to returning a verdict; the jury returned the following unanimous verdict: "We the jury fix the punishment of Mitchell Rutledge, at death."
Thereafter, the trial court held another hearing, to aid it in determining whether or not it would sentence appellant to death as recommended by the jury or to life imprisonment without the possibility of parole. After being afforded an opportunity to submit any additional evidence desired and present further argument, appellant and the State submitted the case to the trial court for decision on the testimony taken before the court on the guilt and sentence phases of the trial and the arguments made. Upon conclusion of the hearing, the trial court entered specific written findings concerning the existence of aggravating and mitigating circumstances, as well as written findings of fact summarizing the crime and appellant's participation in it. In its findings of fact (see "Appendix"), the trial court found the existence of the following aggravating circumstances: (1) That at the time of the commission of the capital felony, the defendant was under a sentence of imprisonment, being under parole from the Alabama state penitentiary, and (2) that the capital felony was committed while the defendant was engaged in *1114 flight after committing the crime of robbery. (This latter aggravating circumstance is encompassed within the capital offense alleged in the indictment.) The trial court examined the evidence for mitigating circumstances and found the existence of the following mitigating circumstances: (1) The defendant had no record of prior criminal convictions for crimes involving force or violence to persons, and (2) he has "family and friends who care about him and have relationships with him that are beneficial to the Defendant and to them." Thus, the trial court found the existence of two aggravating circumstances and two mitigating circumstances. The trial court weighed the aggravating and mitigating circumstances and, in the weighing process, found that the aggravating circumstances "far outweighed" the mitigating circumstances. Having found that the aggravating circumstances outweighed the mitigating circumstances, the trial court accepted the death sentence recommended by the jury and sentenced appellant to death. In arriving at its decision, the trial court stated the following:
"This was a cold blooded and senseless killing committed knowingly and intentionally by the Defendant, a paroled convict, without any mercy for his victim whatsoever, for the heartless purpose of preventing this victim of a robbery from ever testifying against the Defendant."
We find that the findings and conclusions of the trial court are strongly supported by the evidence. We concur in the verdict of the jury and the finding of the trial court that death is the appropriate sentence in this case.
Notwithstanding the fact that the crime occurred before July 1, 1981, the effective date of the 1981 Act, we choose to also review appellant's sentence by the provisions of  13A-5-53, Code of Alabama 1975. Our findings above fully comply with  13A-5-53(a). In compliance with  13A-5-53(b), we find the following: (1) There is no evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) our independent weighing of the aggravating and mitigating circumstances convinces us that the sentence of death is appropriate in this case; and (3) considering the crime committed and the defendant, the death sentence is neither excessive nor disproportionate to the penalty imposed in similar cases.
We have carefully searched the record in this case for error, as required by law, in both the guilt and sentencing phases of appellant's trial, and we have found no error. Accordingly, appellant's conviction and sentence of death are due to be, and they are hereby, affirmed.
AFFIRMED.
TYSON and TAYLOR, JJ., concur.
BOWEN, P.J., dissents with opinion.
McMILLAN, J., joins in dissent.

APPENDIX

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CRIMINAL DIVISION

Case No. CC 81-139

DETERMINATION OF SENTENCE BY COURT FIXING DEFENDANT'S PUNISHMENT AT DEATH
The Defendant in this case, Mitchell Rutledge, was convicted on June 3, 1981 by a jury on a charge of intentional killing of a human being during the commission of a Robbery. Following this guilt-finding phase of the trial, a sentence-determining phase of the trial was held before the same jury on June 4, 1981, as mandated by the Alabama Supreme Court in the case of Beck v. State, 396 So.2d 645 [Ala.1980], and the Defendant's punishment was fixed by the jury's verdict at death. However, on the appeal of the Defendant's conviction and sentence, the Supreme Court of Alabama affirmed the Defendant's conviction but reversed and remanded to this Court the sentence-determining phase of the trial.
Thereafter, this Court set Monday, October 21, 1985, as the date for the re-trial of the sentence-determining phase of this case. On that day, the case was called and *1115 after the voir dire examination of the prospective jurors, a new jury was empaneled and sworn on October 23, 1985, to hear the aggravating and mitigating circumstances in this case and to fix the Defendant's punishment. On October 24, 1985, the jury, after hearing the evidence offered by the State and the Defendant, returned its verdict fixing the Defendant's punishment at death. This being one of the capital offenses defined under Section 13A-5-31 of the Alabama Criminal Code in effect at the time of the commission of the offense in this case, the Court, under the provisions of Sections 13A-5-32 and 13A-5-33 of the said code in effect at that time, fixed today, Thursday, November 7, 1985 at 8:30 a.m., as the time for the conducting of a hearing before the Court, without a jury, to aid the Court to determine whether or not the Court will sentence the Defendant to death or life imprisonment without parole.
When this hearing was called on this day, there appeared the Defendant with his attorneys and also the District Attorney representing the State of Alabama. The State and the Defendant were given the opportunity to offer any further evidence or argument but both stated that there was nothing further to submit and they agreed that no further evidence or arguments need be offered at the hearing today and that the determination of the Defendant's punishment was being submitted to the Court on the testimony taken during the guiltfinding and sentence-determining phases of this trial and the arguments heretofore offered by the attorneys during the trial, all of which has been heard and carefully considered by the Court.
The Court finds from the evidence that at the time of the commission of the offense in this case on December 23, 1980, the Defendant, Mitchell Rutledge, was 21 years of age, had completed the 8th grade of school, was of normal intelligence, and had the capacity to appreciate the criminality of his conduct. He had been recently paroled from the Alabama penitentiary and was unemployed. In the late afternoon or early evening of that day, the Defendant together with two companions, Rayfield Davis and Alvin Morgan, left Phenix City, Alabama, for the purpose of going over the river into Columbus, Georgia, to rob someone to get some Christmas money. To aid them in carrying out the planned robbery, Rayfield Davis was carrying a pistol which Alvin Morgan had borrowed from a friend which was loaded with bullets purchased by Rayfield Davis with a dollar given him by the Defendant.
After crossing the bridge into Columbus, the three of them walked down to Broad Street and went into the Paradise Club. Upon entering the club, they saw one Billy Threatts who was standing at the bar talking to a woman. Billy Threatts, upon seeing them, invited them to have a drink with him from a half-full fifth of rum he had. The four of them got some cups, sat down, and during the next hour or so, drank the rum straight until it was all gone. While sitting and drinking, they told Billy Threatts of their plan to rob someone and he asked to join them. The four of them left the club after finishing their drinks and walked down to First Avenue to look for someone to rob.
While on First Avenue, they saw a van parked near the Fox and Dream Theaters. They then waited outside of the theaters for the driver of the van to appear. Shortly thereafter, the show at one of the theaters let out and they saw a man walk across the street toward the van. The four of them then walked toward the van. Billy Threatts then walked up to the driver's side after telling the other three that "I'm gonna get him". The other three continued walking past the van until they heard the horn blow. At this time, Billy Threatts had the passenger door open and the motor running. The three of them then got in the van with Billy Threatts and the owner of the van, Gable Holloway. Then began riding around Columbus with Billy Threatts driving and then drove across the river through Phenix City. During this ride, they found some marijuana in a coat in the van and they all began smoking it. Also during the ride, the four of them robbed their victim, Gable Holloway of twenty or twenty-five dollars. After entering Lee County sometime after 10:00 p.m. Billy *1116 Threatts drove the van along Highway 280/431 in the direction of Opelika but turned off on a dirt road near Salem before getting to Opelika. He drove down the road about a mile, stopped the van, got out, and then forced Gable Holloway out at gun point. Threatts had gotten the pistol from Rayfield Davis earlier in the evening before they kidnapped their victim. The Defendant, Davis and Morgan followed Threatts and Holloway out of the van. The Defendant asked Threatts what they were going to do with Holloway and Rayfield Davis said to kill him because Holloway knew him. Threatts also said kill him because Holloway knew him also. Gable Holloway then began to beg for his life saying that he had a wife and child to support. They all then began laughing at their victim as he begged for his life. Threatts then handed the pistol to the Defendant. In the words of the Defendant, "everyone except the dude was laughing". Someone said "go ahead and do something" and the Defendant then proceeded to kill his helpless victim as he pleaded for mercy. The Defendant showed him no mercy whatsoever. At a distance of 5 or 6 feet from Holloway, the Defendant fired the pistol at his victim. Holloway didn't fall after the first shot. The Defendant then fired two more shots at his victim at point-blank range and Holloway fell to the ground. Rayfield Davis then grabbed the Defendant and said "let's go". Someone else told the Defendant to empty the gun. He did so by firing twice more at his victim as he lay on the ground.
The four of them then got back in the van and the defendant returned the pistol to Rayfield Davis. Billy Threatts then drove the van back to Phenix City where he let the Defendant and Alvin Morgan out on 15th Place. Morgan and the Defendant then parted, Morgan going to the home of his girlfriend and the Defendant going to his home and to bed about midnight. The next day, Christmas Eve, the Defendant heard over the radio about a dead man being found near Salem. However, he neither reported the crime nor cooperated with the police until being picked up by the law enforcement officers a few days after New Year's Day.
This Court further finds beyond a reasonable doubt, as aggravating circumstances in this case, that at the time of the commission of this capital felony, the Defendant was under a sentence of imprisonment being under parole from the Alabama State Penitentiary and that this capital felony was committed while the Defendant was engaged in flight after committing the crime of robbery.
The Court has carefully and diligently searched the evidence in this case for mitigating circumstances and find that the Defendant has no record of criminal convictions for crimes involving force or violence to persons and that he has family and friends who care about him and have relationships with him that are beneficial to the Defendant and to them.
This was a cold blooded and senseless killing committed knowingly and intentionally by the Defendant, a paroled convict, without any mercy for his victim whatsoever, for the heartless purpose of preventing this victim of a robbery from ever testifying against the Defendant. The Court finds that the aggravating circumstances of the intentional killing in this case far outweighed the mitigating circumstances found by the Court.
IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT as follows:
1. That this Court hereby accepts the death penalty fixed by the Jury in this case and hereby sentences the Defendant, Mitchell Rutledge, to death.
2. That the Defendant is hereby turned over to the Sheriff for transportation to the penitentiary for execution of Defendant's sentence at the place, time, and in the manner as fixed by law.
3. That the Clerk mail or deliver a copy of this order to the following:
 Hon. Ronald L. Myers
 Lee County Justice Center
 Opelika, Alabama 36801
 Hon. Dennis Balske
 P.O. Box 2087
 Montgomery, Alabama 36102-2087
*1117
 DONE this the 7th day of November,
 1985.
 /s/G.H. Wright, J.
 CIRCUIT JUDGE
BOWEN, Presiding Judge, dissenting.
I dissent. In my judgment, the State's closing argument (discussed in part II-A of the majority opinion) was so misleading on the issue of mitigating circumstances that it casts doubt upon the reliability of the sentencing procedure.
Like the prosecutor in People v. Davenport, supra, the district attorney in this case "devoted a major portion of his argument to an item by item application of the statutory aggravating and mitigating factors ... to the evidence in the case." 710 P.2d at 880. Without quoting the actual argument in Davenport, the California Supreme Court characterized the summation as follows:
"From each of the potentially mitigating factors of which there was no evidence11 [Footnote 11: "These were the factors in section 190.3, subdivisions (d) defendant acted under influence of extreme mental or emotional disturbance; (e) victim was participant in homicidal conduct; (f) defendant reasonably believed there was some moral justification or extenuation of his conduct; (g) defendant acted under extreme duress or substantial domination of another person; (h) defendant suffered impaired capacity to appreciate criminality or to conform conduct to law due to mental disease or defect or intoxication; (i) age of defendant; and (j) whether defendant was accomplice or minor participant."] the district attorney found a basis to argue additional aggravation. The lack of evidence that appellant acted under the influence of an extreme mental or emotional disturbance (subd. (d)), or acted in submission to the will of another person (subd. (g)), or that his capacity to appreciate the criminality of his act or to conform his conduct to the law was impaired by alcohol (subd. (h)) all demonstrated that appellant acted calmly, deliberately and of his own free will in the view of the district attorney. The lack of any reasonable belief in moral justification (subd. (f)) made the crime aggravated. And the fact that appellant was himself the perpetrator (subd. (j)) constituted yet another factor in aggravation to the prosecutor."
Because we do not have the actual argument made in Davenport, it is impossible to determine whether the State's comments here were similarly objectionable. In all likelihood, the majority is correct in finding that "The prosecutor did not argue that the lack of evidence of statutory mitigation should be considered by the jury as an aggravating circumstance."
The majority, however, is incorrect in concluding that "the prosecutor did no more than suggest the inapplicability of a mitigating factor." People v. Rodriguez, 230 Cal.Rptr. at 706, 726 P.2d at 152 (emphasis in original). The State's argument here went beyond merely pointing out the nonexistence of statutory mitigating circumstances. It suggested the superiority of statutory mitigation over non-statutory mitigation by implying that if the defendant had been able to carry his burden of showing statutory mitigation, he would not have been forced to hope for leniency based on his life history:
"What you heard from Mr. Balske and the defense in this case was other mitigating circumstances; which gets into the life of the defendant, so to speak. What you did not hear anything about was the statutory mitigating circumstances. Why not? The Code sets out aggravating circumstances, and the Code sets out statutory mitigating circumstances. Why didn't you hear anything about those? Instead of this general review of the defendant's life."
The State's argument was a not-so-subtle attempt to fault the defendant for not showing statutory mitigation. In addition to the numerous references quoted in the majority opinion, to the defendant's failure to put on evidence of mitigation enumerated in  13A-5-51 ("What you did not hear,... Why didn't you hear ... But you didn't hear anything ..." etc.), the district attorney pointedly stated, "If they can offer evidence that one or more of these mitigating *1118 circumstances exist ... he might be more inclined to receive the punishment of life without parole.... But you didn't hear anything about that." Even if the prosecutor's argument did not suggest that the lack of statutory mitigating circumstances was the equivalent of an aggravating circumstance, it did suggest that the defendant had failed to show he was undeserving of the death penalty or to prove mitigation because he had not proved statutory mitigation. The impropriety was compounded by the fact that, prior to arguments, the defense stated that it would not rely on any of the statutory mitigating circumstances and the parties understood that the trial court would not charge the jury on the statutory mitigating circumstances. The argument was a violation of the clear directive of  13A-5-51 ("Mitigating circumstances shall include, but not be limited to ... [statutory mitigating circumstances]") and 13A-5-52 ("mitigating circumstances shall include any aspect of a defendant's character or record....") (emphasis added). See Clisby v. State, 456 So.2d 99 (Ala.Cr.App.1983), affirmed, Ex parte Clisby, 456 So.2d 105 (Ala.1984), cert. denied, 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391 (1985). By elevating statutory mitigating circumstances over "other" evidence of mitigation, the State sought to belittle the effect of the defendant's proof in contravention of the requirement that the sentencer in a capital case shall "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978); Clisby v. State, 456 So.2d at 101. See Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
NOTES
[1] The 1975 capital punishment statute, as contained in  13-11-1 through 13-11-9, Code of Alabama 1975, was transferred to  13A-5-31 through 13A-5-38, Code of Alabama (Blue Supplement 1978) (repealed July 1, 1981). Section  13A-5-31(a)(2) was transferred from  13-11-2(a)(2). The Act repealing  13A-5-31 et seq. provides that the repeal of these sections has no effect on the application of pre-existing law to conduct occurring before the effective date of the Act, July 1, 1981. 1981 Ala. Acts 203, No. 81-178,  19, 20. See Colquitt, The Death Penalty Laws of Alabama, 33 Ala.L.Rev. 213, 215 n. 4 (1982).
[2] The court found several other reasons for reversing the case, among which are the following: Failure to give the instruction, in the penalty phase, that the jury could consider evidence of other crimes introduced as aggravating factors only when the commission of the other crimes was proved beyond a reasonable doubt; failure to inform the jury of its discretion to consider any element of the defendant's background or character as a factor in mitigation; errors in instructions to the jury on the weighing of aggravating and mitigating circumstances; and the prosecutor's discussion in closing argument of the Governor's power of commutation.
[3] Although the instant proceedings were not conducted under the 1981 Act, we note that  13A-5-45(c) provides that "[a]t the sentence hearing evidence may be presented as to any matter that the court deems relevant to sentence", and that  13A-5-46(d) provides that "the jury shall be instructed on its function and on the relevant law by the trial judge."
[4] The language of  13-11-6(5) has remained the same in subsequent enactments:  13A-5-35(5), -49(5).
[5] Section 13A-5-35(8) is the following aggravating circumstance: "The capital felony was especially heinous, atrocious or cruel."